STATE OF MAINE, BY WILLIAM M. PENNELL, Libellant,

*vs.*

INTOXICATING LIQUORS AND VESSELS.

CITY OF PORTLAND, Claimant and Appellant.

Cumberland.    Opinion February 16, 1906.

*Intoxicating Liquors.   Search and Seizure.   City Agency.   Unlawful Sale.   Marked and Unmarked Vessels.   Statute 1851, c. 211, §§ 1, 11.   Statute 1853, c. 48, § 8. Statute 1855, c. 166.   Statute 1858, c. 33, § 28.   Statute 1870, c. 125.   Statute 1885, c. 539, § 8.   Statute 1887, c. 140, § 9.   Statute 1893, c. 253. R. S., c. 29, §§ 32, 34, 47, 48, 49, 51.*

1.   Intoxicating liquors properly purchased for a city or town liquor agency, and in the possession of a duly appointed and qualified liquor agent, which have been taken by virtue of a search and seizure process, and libelled, if not intended for sale in violation of law, are not forfeitable, although the casks and vessels containing them are not marked in accordance with the provisions of R. S., ch. 29, sect. 34.

2.   Such liquors, if contained in casks and vessels at all times conspicuously marked with the names of the municipality owning them, and of its agent, are not subject to seizure and forfeiture, even though intended for sale in this state in violation of law.   Such liquors in vessels so marked are " protected " from seizure and forfeiture, by force of the statute.   R. S., ch. 29, sect. 34.

3.   But such liquors, if intended for sale in violation of law, and if the casks and vessels containing them are not at all times conspicuously marked as provided in the section before referred to, are subject to seizure and forfeiture, the same as any other intoxicating liquors intended for unlawful sale.

*State* v. *Intoxicating Liquors,* 68 Maine, 187, overruled in part.

On report.    Case to stand for trial.

Search and seizure process.    On the ninth day of August, A. D. 1905, one of the deputy sheriffs of Cumberland County made complaint before the Municipal Court for the city of Portland in accordance with the provisions of section 49 of chapter 29, R. S., that he had reason to believe that Charles C. Douglass, who was the then duly appointed and qualified liquor agent of the city of Portland

under section 26 of said chapter, had in his possession certain intoxicating liquors which he intended to sell in violation of law.  A warrant was issued by said court in due form and a large amount of intoxicating liquors were seized upon said warrant.

Said liquors were duly libelled by Wm. M. Pennell, sheriff of said county, in accordance with the provisions of chapter 29, sections 50 and 51, and one of the municipal officers of the city of Portland duly appeared and filed a claim for said liquors in behalf of said city.

Hearing was waived in the Municipal Court and the libel taken by appeal to the Superior Court for Cumberland County.  By agreement of counsel, and by direction of the presiding Justice of that court, the case was reported to the Law Court on the following agreed statement:

"This is a search and seizure process upon which certain intoxicating liquors were seized at the City Liquor Agency in Portland. The liquors in question and the vessels containing them were purchased by the Municipal officers of said city of Portland of the State liquor Commissioner from his stock at his place of business for sale under section 26 of chapter 29 of the Revised Statutes of Maine. The said liquors were pure and unadulterated and not factitious, when said liquors and' vessels were in the possession and custody of Charles C. Douglass the appointed and qualified agent of said city of Portland for the sale of said liquors, who prior to said seizure had given bond as the law directs and had no interest in said liquors or in the profits of the sale thereof.

"The state will offer evidence that the said liquors were unlawfully kept and deposited with the intent to sell the same in this state in violation of law; and claims that upon proof of that fact the liquors should be adjudged forfeited even though all the casks and vessels containing them were marked in full compliance with section 34 of chapter 29, R. S.

"The state will also offer evidence that the casks and vessels containing the liquor were not marked as required by said section 34 of chapter 29, R. S.; and claims that upon proof of that fact the liquors should be adjudged forfeited even though they were not kept and deposited with intent to sell them in this state in violation of law.

"The claimant contends that the liquors are not forfeitable in this proceeding if the casks and vessels containing them were marked as required by said section 34, even though they were kept and deposited with the intent to sell the same in this state in violation of law.

"The claimant further contends that the liquors are not forfeitable in this proceeding if not kept and deposited for unlawful sale in this state, even though the casks and vessels containing them were not marked as required by section 34.

"By agreement of counsel the case is reported to the Law Court upon the foregoing statement. If the Law Court shall sustain both of the claimant's contentions, the libel is to be dismissed and the liquors returned to the claimant; if the Law Court does not sustain either or both of the claimant's contentions, case to stand for trial as to the facts involved in the contention or contentions so not sustained."

The case also appears in the opinion.

*William C. Eaton,* County Attorney, for the state.
*Scott Wilson,* for City of Portland.

SITTING : WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

SAVAGE, J. Claim of the city of Portland for intoxicating liquors seized upon a search and seizure process issued under the provisions of R. S., ch. 29, sect. 49. The liquors were properly libelled by the officer who seized them. They had been purchased by the municipal officers of Portland, of the state liquor commissioner, as provided by statute. They were pure and unadulterated and not factitious, and when seized were in the possession of the duly appointed and qualified liquor agent of the city, for the sale of liquors, who had no interest in the liquors or in the profits of the sale thereof.

The questions presented by the report are whether such liquors so situated are subject to seizure and forfeiture under R. S., ch. 29, sect. 49, and the following sections, if they are kept and deposited with intent to sell the same in this state in violation of law, even

though the casks and vessels containing them are marked in full compliance with section 34 of the same chapter, and whether, if not so marked, they are subject to seizure and forfeiture when not intended for unlawful sale. The claimant contends that they are not so seizable and forfeitable in any event, under any contingencies, and we will first consider that contention. The conclusion, of course, must be reached by a consideration of all of the relevant provisions of the statute prohibiting generally the sales of intoxicating liquors, which is R. S., ch. 29.

Section 47 declares that "no person shall deposit or have in his possession intoxicating liquors with intent to sell the same in the state in violation of law, or with intent that the same shall be so sold by any person, or to aid or assist any person in such sale." In section 48, it is provided that intoxicating liquors kept and deposited in the state, intended for unlawful sale in the state, and the vessels in which they are contained, are contraband and forfeited to the county in which they are so kept at the time when they are seized." Section 49 provides for the issuing of a search and seizure warrant upon the sworn complaint of a person competent to be a witness in civil suits, that "he believes that intoxicating liquors are unlawfully kept and deposited" in a place in the state described, by a person named, if known, "and that the same are intended for sale within the state in violation of law." If liquor is seized upon such a warrant, the subsequent procedure is twofold. The party keeping or depositing the liquors with unlawful intent is subject to punishment. The liquors themselves are libelled in rem, and may be adjudged forfeited under section 51. Section 49 contains the only provisions, relevant to this discussion, which authorize the issuing of a search and seizure process, and forfeiture follows only when liquors have been seized upon a warrant issued on a complaint such as is described therein. It necessarily follows, then, that intoxicating liquors are subject to forfeiture only when intended, at the time of seizure, for sale "in violation of law."

To determine what sales are "in violation of law" we turn to section 40, which provides that "no person shall at any time, by himself, his clerk, servant or agent, directly or indirectly, sell any intoxi-

cating liquors, of whatever origin, except as hereinbefore provided." The phrase "hereinbefore provided" relates back to section 26, which provides that the selectmen of any town, and the mayor and aldermen of any city, "may appoint some suitable person, agent of said town or city . . . to sell "intoxicating liquor purchased by them according to law, to be used for medicinal, mechanical and manufacturing purposes, and no other." All sales of intoxicating liquor in this state, therefore, except those made by a duly appointed and qualified town or city agent, are "in violation of law." But sales by such an agent may also be in violation of law. His authority is not unlimited. On the contrary, it is very narrowly restricted. He can sell only within the town of his appointment, and then liquors to be used only for medicinal, mechanical and manufacturing purposes. He cannot lawfully sell to a minor, without the written direction of his parent, master or guardian, nor to an Indian, soldier, drunkard, intoxicated person, an insane person or spendthrift, if known to him to be such, nor to an intemperate person after the prescribed notice. He cannot lawfully sell liquors which have been decreed to be forfeited, or which are found to be impure, or which are adulterated or factitious, or which have not been legally purchased. He cannot lawfully sell if interested in the liquor or the profits of sale. If he exceeds his authority in any of these respects, he becomes liable to punishment. *State* v. *Fairfield*, 37 Maine, 517. He may be prosecuted as a common seller, notwithstanding his appointment as agent. *State* v. *Keen*, 34 Maine, 500; *State* v. *Putnam*, 38 Maine, 296. And there seems to be no escape from the conclusion that if such an agent has in his keeping and possession intoxicating liquors intended to be sold contrary to any of the above described limitations and restrictions, it is intended to be sold "in violation of law," and so comes within the language of section 49 relating to search and seizure process.

But notwithstanding this the learned counsel for the claimant earnestly contends that it never was the intention of the legislature to subject intoxicating liquors, purchased by municipal authority, and in the possession of lawfully appointed agents for sale, to seizure and forfeiture, and that it is inherently improbable that the legisla-

ture would seek to enforce such a drastic remedy against towns, which are merely subdivisions of the state, for governmental purposes, when neither they, nor perhaps their municipal officers are in fault, and when the purposes of the law can be secured by the punishment of the offending agent. It is urged that the history of prohibitory liquor law legislation shows the absence of such an intention, and that a contrary construction would lead to absurd results. There would be, we think, much force in the doctrine of inherent improbability, in the absence of any express language in the statute tending to show that seizures of town or city agency liquors under some contingencies, at least, were within the contemplation of the legislature.

In his argument drawn from history, the counsel calls our attention to the earliest statute of this character. Laws of 1851, ch. 211. That act provided for the appointment of town liquor agents, whose authority was limited to sales of liquors "to be used for medicinal and mechanical purposes, and no other." There was no other express restriction. All others were prohibited from selling intoxicating liquors. By section 11 of the act, search and seizure process was to issue on the sworn complaint "that spirituous or intoxicating liquors are kept or deposited and intended for sale" by a person "not authorized to sell the same in said city or town under the provisions of this act." The only reference in the act to the seizure of agency liquors is found in section 12, where it is provided that in case the keeper or possessor of liquors seized is unknown to the officer seizing them, they shall not be condemned until they have been advertised, so that "if such liquors are actually the property of any city or town in the state, and were so at the time of the seizure, purchased for sale by the agent of said city or town, for medicinal or mechanical purposes only . . . . they may not be destroyed," but may be delivered to the city or town agent. It will be noticed that the provision for search and seizure related to liquors "intended for sale by a person not authorized to sell the same," and not as in the present statute, to all liquors "intended for sale in this state in violation of law." So that in any event the process did not lie against liquors in the possession of agents and

intended for sale by them, either lawfully or unlawfully. And the latter provision referred to in that statute was to protect the property of towns which had been seized unwittingly, without knowledge of the town's ownership, and it was to be returned if not intended for sale for other than medicinal and mechanical purposes.

In the laws of 1853, ch. 48, which was amendatory of and additional to the Act of 1851, the search and seizure provisions in section 1 were limited to liquors kept or deposited by a person "not authorized by law to sell the same, . . . and intended for sale in violation of law." But section 8, besides expressing many additional restrictions upon the authority of agents to sell, provides that "no such liquors owned by any city, town or plantation, or kept by any agent of any city, town or plantation, as is provided by the act to which this is additional . . . . shall be protected against seizure and forfeiture, under the provisions of this and of said act, by reason of such ownership," unless all the casks and vessels are marked, and so forth. We shall discuss the provisions relating to marking casks and vessels, and their effect, later. Just now we are pointing out that the words of the act of 1853 indicate that under some conditions, at least, there might be, by virtue of the statute, seizure and forfeiture of agency liquors. Construing section 1 and section 8 together, we think the meaning is evident. Under the language of section 1, agency liquors were protected because, in terms, the process lay only against liquors not kept or deposited by an authorized agent, but by section 8 that protection was removed, and they were therefore made liable to seizure and forfeiture, in case the casks and vessels were not marked. In such case, the limitation in section 1 did not apply. Moreover, the word "such" in the phrase "no such liquors owned by any city . . . shall be protected" seems clearly to refer to liquors which had been seized upon search and seizure process, and concerning which proceedings were to be had for forfeiture, in accordance with the immediately preceding sections. Again in the same section, it is provided that adulterated or factitious liquors shall not be protected from seizure and forfeiture by reason of being kept for sale by such agents." We are therefore of opinion that notwithstanding the limitation referred to in section

1, these provisions indicate that the legislature contemplated that in certain instances, at least, agency liquors might properly be seized and forfeited. The same provisions appear in the Laws of 1855, ch. 166, which was a substitute for the Laws of 1851 and 1853. Though subsequently repealed in 1856, the provisions found in section 8 of the Laws of 1853, by reenactment in 1858 and since, are found in substantially the same form in present section 34.

In the Laws of 1858, ch. 33, the previous agency statutes were reenacted in substantially the same form in which they exist now. Indeed, the language of most of the provisions followed that in the former statute. The search and seizure provisions were however changed so as to be applicable in terms to all liquor "intended for sale within this state in violation of law," the limitation as to authorized agents being omitted. The language is broad enough to reach liquors intended to be sold by the agent himself in violation of law. Old section 8 of the Laws of 1853, relating to protection of agency liquors, or the want of it, reappears as section 28, following as before the search and seizure and forfeiture sections. Its relative situation in the statute is significant. No doubt the interpretation which should have been given to it then ought to be given to it now, though in the revisions of 1883 and 1903 it has been transposed to that part of the statute which relates more particularly to city and town agencies.

The counsel however urges that the construction we have so far placed upon the statute leads to an absurdity, in that the statute of 1858, the language of which in the search and seizure section for the first time made all liquors seizable and forfeitable, if they were intended for sale in violation of law, whether kept by agents or not, also provided in section 18 that all liquors and vessels seized and declared forfeited should be delivered by order of court to the mayor and aldermen of the city, or the selectmen of the town, to which they were forfeited, and that such portions as were found upon examination to be fit to be sold for medicinal, mechanical or manufacturing purposes should be turned over by them to their liquor agent to be sold, in accordance with the act. In other words, liquor seized from a town or its agents, if forfeited, was ordered back to the town, and,

if suitable, returned to the agent. Such was undoubtedly the effect
of the Law of 1858, and it so continued until the Laws of 1870, ch.
125, when it was provided that liquors forfeited should be destroyed
by spilling on the ground, and town agents were subjected to a
penalty if they sold forfeited liquors. In 1885, the Law of 1858 in
this respect was restored. Laws of 1885, ch. 359, sect. 8. But in
1887, the Law of 1870, requiring a destruction of forfeited liquors,
was reenacted. Laws of 1887, ch. 140, sect. 9. And that continued
to be the law until chap. 253 of the Laws of 1893, which required
that all forfeited liquors containing more than twenty per cent of
alcohol should be turned over to the sheriff to be sold for the benefit
of the county, and that all others should be destroyed. But notwith-
standing these changes from time to time in the method of disposing
of forfeited liquors, we think they worked no change in the construc-
tion of section 28, of the Law of 1858, which has remained unchanged
to the present time. If agency liquors were forfeitable under the
Law of 1858, they are forfeitable now. If they were not forfeitable
then, they are not now. Section 28, as we have seen, was borrowed
almost verbatim from the Law of 1853. But the Law of 1853 also
provided for a destruction of the liquors, and not for a return of them
to the municipal officers, as in the Law of 1858. It is undoubtedly
true sometimes that when an existing statute is amended, or a former
statute reenacted with changes in some particulars, the effect of the
amendment upon other parts of the statute is not well considered.
In such cases it is the duty of the court to declare, as well as it can,
the legislative intent shown in the whole statute as amended, or, in
other words, to declare to what extent the legislature intended the
existing law to be affected by the amendment. It has been seen that
the Law of 1853 contemplated that agency liquors might be seized
and forfeited in certain contingencies. We cannot avoid the conclu-
sion that the legislature, in reenacting the same law, in the same
language, in 1858, intended the same result, although another dispo-
sition of forfeited liquors was provided for. We cannot hold other-
wise without doing violence to the language of section 28 in the Law
of 1858.

And it may fairly be said, in this connection, that this construction

of the law of 1858 does not lead to such an utter absurdity as is contended. At least one of the contingencies when agency liquors were not protected from seizure and forfeiture was when they were adulterated and factitious, and known by the agent to be such. While the law of 1858 required the delivery of forfeited liquors to the municipal authorities, only such as were found fit for medicinal, mechanical or manufacturing purposes were to be turned over to the agent for sale. The rest were to be destroyed. And in any event, by the seizure of such liquors, and the necessity of making claim therefor, the attention of the authorities would be sharply called to the conduct or misconduct of their agents which made the liquors subject to seizure. Upon a consideration of the whole statute, we are satisfied that agency liquors were then, and are now, seizable and forfeitable, under certain contingencies. It was so held in *Androscoggin R. R. Co.* v. *Richards*, 41 Maine, 233, a case arising under the law of 1853, and it was necessarily so held, although the question was not much discussed, in *State* v. *Intoxicating Liquors*, city of Belfast claimant, 68 Maine, 187, a case which arose under the law as it was enacted in 1858, and reenacted in the revision of 1871.

But we think it is only under certain contingencies that agency liquors are subject to seizure and forfeiture. While it is true that, in general terms, the statute provides that all liquors intended for sale in violation of law may be seized and forfeited, the present section 34 (section 28 in the law of 1858) declares that no such liquors owned by a city or town, or kept by an agent thereof, as provided by law, are protected against seizure and forfeiture, by reason of such ownership, " unless all casks and vessels in which they are contained are at all times conspicuously marked with the name of such municipality and of its agent," also, that "they shall not be protected from seizure and forfeiture by reason of being kept for sale by such agents, if they have knowledge that the same are adulterated or factitious." The only reasonable inference to be drawn from this language is, we think, that under some contingencies they are protected. Otherwise the words "are protected" and " shall not be protected " have no significance. In one case no

liquors are protected by reason of municipal ownership, unless marked. In the other they are not protected by reason of being kept for sale by agents, if they are known to be adulterated or factitious. It seems to us that the implication is clear,— e converso,— that if the casks and vessels containing them are properly marked, the liquors are protected from seizure and forfeiture, even though intended for sale in violation of law, except that adulterated and factitious liquors are not protected in any event. The last qualification, however, has no bearing in this case, as it is admitted that the liquors seized were pure and unadulterated and not factitious.

The effect of this construction of the statute, and which was, as we think, among its obvious purposes, is not only that it tends to prevent the making of false claims that liquors seized belong to a town, when in fact they do not, but also that the municipal authorities who alone are authorized to purchase liquors for sale by agents, may protect the property of their towns in this respect against the results of the misconduct of their agents, by seeing to it that the casks and vessels are properly marked. This they can well do. And in this way agency liquors may be at all times kept separate and distinct from others. It is not to be presumed that the legislature anticipated that the municipalities themselves might intend the liquors to be sold unlawfully, though their agents might so intend. And for that reason it is reasonable that the municipal authorities should be permitted to protect the liquors from seizure by marking the casks and vessels containing them, while the agents are punishable for their own misconduct. On the other hand, if the municipal authorities fail to do this, and if the casks and vessels containing them are not properly marked, the liquors are not protected by reason of the ownership of the city or town.

But such liquors are not rendered subject to seizure and forfeiture simply for want of proper marking. Liquors are only so subject when intended for sale in violation of law. There is no statute specifically requiring the casks and vessels to be marked. Hence we think selling liquors contained in unmarked casks and vessels is not of itself in violation of law. The provision respecting the effect of marking casks and vessels is for the protection of the town against

seizure and forfeiture. Although the casks and vessels are not marked, still the liquors are not forfeitable, if it appears that they were not kept for unlawful sale. Sect. 51. The case of *State* v. *Int. Liquors*, Belfast claimant, 68 Maine, 187, is relied upon as authority to the contrary. So far as the question of marking the vessels is concerned, that case is not to be distinguished from the one at bar. But in that case, the question was disposed of in a single sentence, without any discussion, and the point does not appear to have been fully considered. We are of opinion that the conclusion of the court to the effect that agency liquors are seizable and forfeitable merely because the vessels containing them are not properly marked is not sustainable in reason, and that the Belfast case referred to must be regarded as overruled to that extent.

We conclude then, (1) that the liquors in this case, if found not to be intended for sale in violation of law, are not forfeitable, even if the casks and vessels containing them were not marked in accordance with the statute ; (2) that if they were intended for sale in this state in violation of law, but were contained in casks and vessels properly marked, they were not forfeitable, and (3) that if they were intended for sale in this state in violation of law, and the casks and vessels in which they were contained were not marked according to the statute, they are forfeitable.

It is proper to add that the equitable remedy against misconducted agencies, provided in section 32, is to be regarded as additional to the other statutory proceedings, and is not a substitute for any of them. Since that remedy was created, all the other statutory provisions have been reenacted without change.

In accordance with the stipulation, the case is to

*Stand for trial.*